The Honorable Jim Appleman State Attorney Fourteenth Judicial Circuit Jackson County Courthouse Post Office Box 1561 Marianna, Florida 32446
Dear Mr. Appleman:
This is in response to your request for an opinion on substantially the following questions:
 1. ARE ASSISTANT STATE ATTORNEYS WHOSE DUTIES REQUIRE THE INVESTIGATION OF PERSONS CHARGED WITH CRIME AS A PART OF THEIR PREPARATION TO PROSECUTE CRIMINAL CASES INCLUDED IN THE DEFINITION OF "LAW ENFORCEMENT OFFICER" SET FORTH IN SECTION 2(1) OF CH. 83-115, LAWS OF FLORIDA?
 2. IS THE $20,000 DEATH BENEFIT PROVIDED BY s 112.19(2)(a), F.S., IN ADDITION TO ANY BENEFITS PROVIDED BY CH. 83-115?
 3. WHAT BUDGET ENTITY IS CONTEMPLATED IN SECTION 2(3) OF CH. 83-115 BY THE PHRASE ". . . THE STATE SHALL PAY CERTAIN EDUCATIONAL EXPENSES . . ."?
 4. TO WHAT DO THE WORDS "SAID SUM" RELATE IN SECTION 2(4)(a) OF CH. 83-115 — THE $50,000.00 CASH BENEFIT ONLY OR THE $50,000.00 CASH BENEFIT AND THE EDUCATIONAL BENEFITS?
Sections 1 through 4 of Chapter 83-115, Laws of Florida, constitute the "Florida Law Enforcement Officers and Firefighters Death Benefit Act," and are tentatively codified as ss 112.1904 and 112.1914, F.S. 1983, and became effective October 1, 1983. This act provides in pertinent part for a $50,000 death benefit payable to the beneficiary, family, or estate of law enforcement officers who are unlawfully and intentionally killed while in the actual performance of their duties, and also provides for payment of certain educational costs for the children of such officers.
QUESTION ONE
Your letter of inquiry and supplemental materials furnished us by your office indicate the need for clarification of the scope and application of this legislation. Specifically, you are in doubt as to the application of s 2 of Ch. 83-115, to assistant state attorneys whose duties require the investigation of "persons charged with crimes as a part of their preparation to prosecute a criminal case." Section 2(1) of Ch. 83-115 furnishes the following definition of the term "law enforcement officer" for the purposes of that section:
 As used in this section, "law enforcement officer" means a full-time officer or employee of the state, or any political subdivision of the state, including any correctional officer, whose duties require him to investigate, pursue, apprehend, arrest, transport, or maintain custody of persons who are charged with, suspected of committing, or convicted of a crime and including any member of a bomb disposal unit whose primary responsibility is the location, handling, and disposal of explosive devices.
The provisions of Ch. 943, F.S., which generally govern the employment, training and certification of all law enforcement officers and correctional officers, defines "law enforcement officer" as:
 "Law enforcement officer" means any person who is elected, appointed, or employed full time by any municipality or the state or any political subdivision thereof, who is vested with authority to bear arms and make arrests, and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, criminal, traffic, or highway laws of the state. This definition includes all certified supervisory and command personnel whose duties include, in whole or in part, the supervision, training, guidance, and management responsibilities of full-time law enforcement officers, part-time law enforcement officers, or auxiliary law enforcement officers, but does not include support personnel employed by the employing agency. Section 943.10(1), F.S.
I find no provision of Ch. 27, F.S., that authorizes or requires assistant state attorneys to perform the above-described duties. See, s 27.181, F.S., and compare, s 27.255 and 27.251, F.S., relating to the state attorneys' investigators and their duties, powers and training (the latter pursuant to minimum standards established by Ch. 943, F.S.) as "law enforcement officer[s] of the state." If assistant state attorneys in fact functioned as law enforcement officers, by the terms of ss 943.14 and 943.145, F.S. (1982 Supp.), assistant state attorneys would be required to obtain certification by the Criminal Justice Standards Training Commission within the Department of Law Enforcement. Supplemental materials furnished by your office indicate that assistant state attorneys are not certified as law enforcement officers pursuant to s 943.145. While s 27.181(3) provides that each assistant state attorney shall have all of the powers and duties of the state attorney appointing him, under the direction of the state attorney, with the exception of s 27.14, F.S. (relating to assignment of state attorneys to other circuits), no provision of Ch. 27 mentions the terms "investigate" or "investigation." See, e.g., ss 27.02, 27.03, 27.04, 27.06, F.S. In the absence of any judicial or legislative direction, I do not apprehend and am unable to state that the use of this term "investigate" in s 2(1) of Ch. 83-115, clearly expresses any legislative purpose to include the activities of assistant state attorneys, in their preparation for prosecution of criminal cases, within the powers and duties of law enforcement officers delineated in s 2(1) of Ch. 83-115. Compare, AGO 76-24 (concluding that parole and probation officers are "law enforcement officers" for purposes of s 112.19, F.S.), and see also, ss 843.01 and 843.02, F.S. (relating to obstruction of justice and resisting officers with or without violence, which do not include assistant state attorneys within their terms); but see, s 790.001(8)(f) (including assistant state attorneys within the terms of "law enforcement officer" for purposes, inter alia, of determining who may carry concealed weapons); see also, AGO 82-40 (discussing the definition of the term "law enforcement officer" as it is used in Ch. 119, and in other statutes). Moreover, the tapes of legislative debate and committee discussion do not reflect an intent to include assistant state attorneys within the scope of this legislation. See, Senate Floor Debate Tapes, June 1 and 3, 1983; Senate *2988 Personnel, Retirement and Collective Bargaining Committee Tapes, April 13, 1983; House Floor Debate Tapes, June 3, 1983. In light of the foregoing, it is my opinion that assistant state attorneys are not included within the term "law enforcement officer" for the purposes of s 2(1) of Ch. 83-115, Laws of Florida. It appears, however, that state attorneys' investigators, whom s 27.255
declares to be law enforcement officers and conservators of the peace, are included within the purview of the definition in s 2(1) of Ch. 83-115, and are covered by the provisions of s 2(2)-(4) of Ch. 83-115.
QUESTION TWO
Your second question asks if the death benefit provided by s112.19(2)(a), F.S., is in addition to any benefits provided by Ch. 83-115, Laws of Florida. This question is answered in the affirmative. Section 2 of Ch. 83-115, is tentatively codified as s 112.1904, F.S. 1983, which would place it in the statutes immediately following s 112.19, F.S., which provides a $20,000 death benefit for law enforcement officers. See, AGO 83-10 for a discussion of s 112.19. There is no language in Ch. 83-115 that expressly repeals s 112.19, nor any language that provides that acceptance of death benefits under s 112.19 precludes acceptance under s 112.1904, or vice versa. Moreover, repeals by implication are not favored and are found to exist only where two statutes are irreconcilable. State v. Digman, 294 So.2d 325 (Fla. 1974); Mann v. Goodyear tire and Rubber Co., 360 So.2d 666 (Fla. 1974). Additionally, tapes of discussion of the Senate Personnel, Retirement, and Collective Bargaining Committee on April 13, 1983, do not indicate any intent to repeal or replace s 112.19; rather, committee discussion of this issue reveals an express intent for Ch. 83-115 coverage to apply in addition to the coverage provided by s 112.19(2)(a).
QUESTION THREE
Your third question asks what budget entity is contemplated by s 2(3) of Ch. 83-115, Laws of Florida, in its use of the phrase "the state shall pay certain educational expenses . . . ." It would appear that the contemplated or intended budget entity responsible for payment of the described educational benefits is the employer of the law enforcement officer. See, s 2(4)(b) of Ch. 83-115 (providing that "[p]ayment of benefits to beneficiaries of state employees, or of the premiums to cover the risk, under . . . this section shall be made from existing funds otherwise appropriated for the department" [e.s.]. If it were not for the language in s 2(3) that the benefit payable is an "amount equal to the cost" at certain state educational institutions, this educational benefit might have been handled by tuition waiver at state universities, community colleges, and vocational-technical schools. However, subsection (3) is phrased so that a cash benefit is involved rather than a tuition waiver.[1]
Additionally, tapes of the Senate Floor Debate on June 1 and 3, 1983, discussing this bill indicate it was intended that Ch. 83-115, have no fiscal impact on the state. See also, tapes of Senate Appropriations Committee on May 26, 1983 and tapes of House Floor Debate on June 3, 1983, stating that the bill was amended in committee to remove fiscal impact from the state budget and amended so that the cost would be borne by local governments.
QUESTION FOUR
You also ask if the words "said sum" as they are used in s 2(4)(a) of Ch. 83-115, Laws of Florida, relate to the $50,000 cash benefit only or to both the $50,000 benefit and the educational benefits. It appears that you have asked this question because you are concerned about your duties under s 2(4)(a) of Ch. 83-115, which requires the employer of law enforcement officers (s 27.255, F.S., declares the state attorneys' investigators to be law enforcement officers and conservators of the peace) to be self-insured or procure insurance to cover the liability imposed by s 2 of Ch. 83-115. At the very least, subsection (4)(a) of s 2 of the act specifically requires the employer to pay the death benefit and in my response to question three, I concluded that the employer is responsible for payment of the educational benefits. Subsections (4)(a) and (4)(b) read together in light of the legislative history, evince legislative intent to impose liability for the payment of both the educational benefit and the $50,000 death benefit on the employer.
In the legislative process on the proposed legislation, "said sum" may have originally referred to "the sum of $50,000," a phrase which is used in s 2(2). However, as noted above, since subsections 2(4)(a) and (b) as finally enacted and the legislative history indicate that the employer is liable for both classes of risks, it would appear that "said sum" should be construed as applying to both the death benefit and the educational benefit.
In summary, it is my opinion pending legislative clarification, that:
 1) Assistant State Attorneys are not included within the scope of the term "law enforcement officer" as defined in and for the purposes of s 2 of Ch. 83-115, Laws of Florida. However, state attorneys' investigators are declared by s 27.255 to be law enforcement officers and conservators of the peace and are within the purview of s 2 of Ch. 83-115.
 (2) The $20,000 death benefit provided by s 112.19(2)(a), F.S., is in addition to any benefits provided by the Florida Law Enforcement Officers and Firefighters Death Benefit Act, Ch. 83-115, Laws of Florida.
 (3) The employer is the budget entity responsible for payment of educational benefits conferred by Ch. 83-115, Laws of Florida (s 112.1904, F.S. 1983).
 (4) The words "said sum" used in s 2(4)(a) of Ch. 83-115, Laws of Florida, would appear to relate to both the $50,000 death benefit and the educational benefit for the children of law enforcement officers since the employer is the entity responsible for payment of both of these risks.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General
[1] It is possible that the Legislature had first intended that the benefit conferred by s 2(3) be merely a tuition waiver. Compare, the express language of s 2(3) with the intent expressed on tapes of discussion of the Senate, Personnel, Retirement, and Collective Bargaining Committee on April 13, 1983, in which the sponsor of the bill proposed the tuition waiver approach.